**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | | |
|---|---|---|
| ISIDRO C. MARTINEZ | ) | 3:04-CV-254-ECR-VPC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| WASHOE COUNTY DEPUTY SHERIFF D. Hobbensfeiken, individually and in his official capacity; UNNAMED WASHOE COUNTY DEPUTY SHERIFF ONE, individually and in his official capacity; UNNAMED WASHOE COUNTY DEPUTY SHERIFF TWO, individually and in his official capacity; UNNAMED WASHOE COUNTY DEPUTY SHERIFF THREE, individually and in his official capacity; DENNIS BALAAM, individually and in his official capacity as Sheriff of Washoe County; and WASHOE COUNTY, a Duly Constituted Political Subdivision of the State of Nevada, inclusive, | ) | |
| Defendants. | ) | |

**I.  Procedural Background**

On May 17, 2004, Plaintiff Isidro C. Martinez ("Plaintiff" or "Martinez") filed a Complaint against Defendants Washoe County Deputy Sheriff D. Hoffenfeiken, three unnamed deputies sheriffs, the Washoe County Sheriff's Department, Washoe County, and Dennis Balaam, Sheriff of Washoe County, alleging violations of

1  Plaintiff's First and Fourth Amendment constitutional rights,
2  rights under 42 U.S.C. § 1983, and Nevada state common law claims
3  of wrongful arrest, assault, battery, and excessive force.
4      On June 9, 2005, Defendant Hoffenfeiken filed a Motion for
5  Summary Judgment (#29). On July 13, 2005, Plaintiff filed a
6  response (#36) and Defendant replied (#39) on July 25, 2005.  For
7  the reasons stated below, Defendant's motion will be **granted**.

**II.  Statement of Facts**

   We consider the facts taken in a light most favorable to the Plaintiff in deciding this summary judgment motion.

   On September 27, 2003, near the end of his graveyard shift at approximately 5:30 a.m., Deputy Sheriff Hoffenfeiken was driving northbound on Pyramid Highway near the intersection with Spring Ridge Drive in Sparks, Nevada when he spotted a car speeding in the opposite direction going southbound on Pyramid Highway.  Deputy Hoffenfeiken turned his patrol car around to pursue the speeding car and activated his patrol car lights.  Upon seeing the patrol car lights, Martinez pulled over at the first available place he could turn off the highway.  This was the Raley's commercial center on the corner of McCarran Boulevard and Pyramid Highway.

   After Plaintiff pulled over and Hoffenfeiken pulled up behind him, Hoffenfeiken walked up to Plaintiff's car and made initial contact with Plaintiff to ascertain Plaintiff's identity by way of his driver's license and vehicle registration information. Hoffenfeiken informed Plaintiff he had been stopped for speeding. Plaintiff handed over his Nevada state driver's license which had his Social Security number, address, and date of birth on it and

2

presented Hoffenfeiken with his vehicle registration.  He then searched for his insurance information while Hoffenfeiken went back to his patrol car to verify the information Martinez had given him.

Back at his patrol car, Hoffenfeiken contacted the dispatcher on his car radio to get more information on Plaintiff via a routine warrants and wants check.  The dispatcher informed Hoffenfeiken that Martinez was a possible match for a fugitive warrant out of California for failure to appear for a DUI drug charge.  The dispatcher informed Hoffenfeiken that the information Hoffenfeiken had given them matched for name (except for the middle name Campos not Callejas) and date of birth but that the social security number was different.  The dispatcher gave Hoffenfeiken further information to try to determine if Martinez was a match: the wanted Martinez had four scars on his right arm and a scar near his eyes.

Hoffenfeiken returned to Plaintiff's car where he observed that Plaintiff had the identifying scars.  Hoffenfeiken went back to his patrol car and told the dispatcher that the scars were a match.  Dispatch told Hoffenfeiken to call the National Crime Information Center ("NCIC").  NCIC had the same information about the scars as the dispatcher.  NCIC had additional information: that the wanted Martinez had an old California address of 876 East 43rd Street in South Central Los Angeles.  NCIC informed Hoffenfeiken that they would contact Parole and Probation in California to get them to email a picture of the wanted Martinez.  This would require Hoffenfeiken to take Plaintiff to the jail as he did not have email capacity in his patrol car.

3

Hoffenfeiken then returned to Plaintiff's car and ordered Plaintiff to get out and go to the rear of the vehicle. Hoffenfeiken asked Plaintiff if he was Isidro Callejas Martinez to which Plaintiff replied he was not.  Plaintiff was asked his old address in California and responded, "876 East 43rd Street, South Los Angeles."  Plaintiff was not told the basis for which he was being detained however he insisted that Hoffenfeiken was mistaken, saying "that's not me" and "I don't do drugs and drive." Hoffenfeiken decided to take Plaintiff into custody due to the number of matched identifiers associated with the California warrant.  Although he did not resist arrest, Plaintiff was handcuffed and Hoffenfeiken placed him in the back of the patrol car.  Hoffensfeiken then transported Plaintiff to the jail. Plaintiff grumbled in the car that the only reason he was being arrested was because he was Hispanic.  Upon arrival at the jail, Hoffenfeiken checked the email photo from the California Parole and Probation Office.  Hoffenfeiken determined the photo was a match. Hoffenfeiken then learned of two other fugitive warrants for the wanted Martinez.  At that point, Hoffenfeiken left the jail at 7:27 a.m., his shift having terminated.

This was not the first time that Plaintiff had been mistaken for Isidro Callejas Martinez.  In 2003, Martinez's paychecks were garnished by the Monterey County Department of Child Services because of Callejas' apparent default on child support payments. In trying to buy a home in 2003, and a truck in 2004, Plaintiff learned through a lending institution that Callejas had an address

4

listed in Los Angeles that was the same as the house that Plaintiff owned on 876 East 43rd Street.

In 2002, Washoe County Deputy Sheriff Todd Hill had pulled Plaintiff over and accused him of being Callejas. Hill detained Plaintiff for over two hours and searched his arms, stomach and back looking for the tattoos that Callejas was purported to have. Plaintiff was eventually released and Plaintiff took Hill's business card.

After that time, Plaintiff was pulled over approximately seven times and each time, the officers examined his body searching for tattoos and each time they released him without charging him. Due to the continued harassment, Plaintiff has sought to resolve the issue of his identity. He obtained a letter from Child Services in Monterey County, California; he requested printouts from the Nevada Department of Motor Vehicles; and he has met with Rusty Snyder, Deputy Community Liaison for the Washoe County Sheriff's Department. Snyder assured Plaintiff that such mishaps would not happen in the future and gave Plaintiff his business card. However, after the meeting, Plaintiff was again pulled over by the Sparks Police Department and he was searched.

After Hoffenfeiken deposited Plaintiff at the jail, Plaintiff was placed in a small room and made to face the wall while his hands were handcuffed behind him. He complained to the officers (Hoffenfeiken had already left and Plaintiff had been passed over to other officers) that it was painful for him to stay in this position as he suffered chest pains. The officer told him he didn't care and when Plaintiff attempted to shift his position, the

officer told him not to move.  The officers began by asking what Plaintiff's real name was, where he had bought his social security card, and if he had been drinking.  They gave him a breathalyzer test and took his photograph.  Plaintiff attempted to explain the situation of mistaken identity and that he had already met with Snyder, but the officers did not give him a chance to explain.

The officers took Plaintiff into a smaller room and told him to kneel before a bench and place his head on the bench.  One officer took off the handcuffs while the other used his foot to hold Plaintiff's head to the bench.  One officer took one hand and another officer took the other and they both pulled and twisted his hands away from his body.  At the same time, the fourth officer took his legs and crossed them.  The two officers continued to lift Plaintiff above the ground two feet and then to drop him on the concrete.  They continued this treatment four or five times while insisting that Plaintiff admit he was Callejas.  If true, this conduct was nothing less than reprehensible and despicable.

Plaintiff stayed in the small room for approximately four hours.  He was then taken by another officer for more photographing and fingerprinting.  He was visited by a nurse at 1:30 p.m.  After that more photographs and fingerprints were taken.  After waiting again for an hour, Plaintiff was given a prison uniform and tennis shoes, a shot, was made to shower, and then was sent to a cell.

At 4 or 5 p.m., he was sent to a reception area where he spoke to an officer.  Plaintiff spoke again of his problems of identity.  Shortly after this meeting, he was released.  His wife and children had been waiting at the jail, but were not given any information as

1 to why Plaintiff had been detained.  They were told that Plaintiff
2 was going to be deported because he was illegal.
3   Plaintiff's traffic violation charge was dismissed when, at
4 trial, Plaintiff produced proof of insurance.

**II.  Discussion**

**A.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  <u>Northwest Motorcycle Ass'n v. U.S. Department of Agriculture</u>, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, <u>Bagdadi v. Nazar</u>, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  Fed. R. Civ. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth

7

specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form-- namely, depositions, admissions, interrogatory answers, and affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary Judgement is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

**B.   1983 Claim of Excessive Force**

Plaintiff claims that Deputy Hoffenfeiken applied excessive force against him because Hoffenfeiken handcuffed him before bringing him to the jail.[1]  The act of handcuffing is the basis for the claim of excessive force.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.  Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted).  Supreme Court jurisprudence has long held that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Id.  The reasonableness of the force used requires a case-by-case determination of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or to others, and whether he is actively resisting arrest of attempting to evade arrest by flight.  Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1984)).

---

[1]Plaintiff's claim for excessive force used in his detention in the jail can only be asserted against the other officers as solid evidence has been presented and Plaintiff has admitted that Hoffenfeiken was not involved in the treatment of Plaintiff in the small room with the other four officers at the jail.

1    The reasonableness of the use of the force is to be judged
2 from the perspective of a reasonable officer at the scene, rather
3 than with the 20/20 vision of hindsight.  Id.  "The calculus of
4 reasonableness must embody allowance for the fact that police
5 officers are often forced to make split-second judgments in
6 circumstances that are tense, uncertain, and rapidly evolving-about
7 the amount of force that is necessary in a particular situation."
8 Id.
9    The reasonableness inquiry in an excessive force case is an
10 objective one: the question is whether the officer's actions are
11 "objectively reasonable" in light of the facts and circumstances
12 confronting them without regard to their underlying intent or
13 motivation.  Id (citing Stocc v. United States, 463 U.S. 128, 137-
14 39 (1978)).
15    Plaintiff cites US v. Bravo, 295 F.3d 1002 (9th Cir. 2002) for
16 the proposition that use of handcuffs is an unreasonable use of
17 force.  However, the factual scenario of Bravo differs greatly from
18 the facts here and the holding of Bravo does not extend so far as
19 to rule that when a person is not evading arrest, handcuffs cannot
20 be used.
21    Bravo involved the detention and investigatory search of
22 Bravo's toolbox at the United States border.  The question of
23 handcuffing arose when Bravo questioned whether the stop was a
24 "routine" investigation or had converted into a non-routine border
25 arrest.  Id, at 1015-17.  The issue of "handcuffing" related to
26 whether Bravo had indeed been arrested or whether the officers were
27 still conducting the routine border search.  Bravo has nothing to
28

do with whether the use of handcuffs for detention and transport of a suspect to the jail constitutes excessive force.

We therefore again review the factors applicable to whether Defendant Hobbensfeiken's act of handcuffing Plaintiff constituted use of excessive force. First we note that since Plaintiff was already being detained, the use of handcuffs imposed little more force on him that being put into a patrol car, jailed, photographed and fingerprinted. The Supreme Court has held that the imposition of correctly applied handcuffs on someone who is already being lawfully detained is reasonable. Mueller v. Men, 125 S. Ct. 1465, 1470 (2005). Here, since, as later discussed, Hoffenfeiken was effecting what reasonably appeared to him to be a lawful arrest and proceeded to lawfully detain the Plaintiff, the use of handcuffs was reasonable.

In addition, we note that Hoffenfeiken thought Plaintiff was Callejas for whom an arrest warrant was outstanding on DUI drug charges. Hoffenfeiken thought Plaintiff was a fugitive and had evaded the law before. Therefore, the use of handcuffs to detain Plaintiff during his ride to the jail was reasonable.

**C. 1983 Claim of False Arrest/Mistaken Identity**

Plaintiff claims that Hobbensfeiken's mistake in identifying him constituted false arrest and violated his Fourth Amendment rights. He claims that because the arrest warrant was for someone else, Plaintiff was unlawfully seized and deprived of his liberty based on the incorrect identification.

The Supreme Court has held that the Constitution permits an officer to arrest a suspect without a warrant if there is probable

cause to believe that the suspect has committed or is committing an offense.  Devenport v. Alford, 543 U.S. 146, 125 S. Ct. 588, 594 (2004).  An arrest is supported by probable cause if "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."  Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004)(quoting Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002)).

At the time of the arrest, Hoffenfeiken possessed the following information: (1) there was a valid arrest warrant for a Isidro Callejas Martinez from California (2) Plaintiff's name matched but for the fact that Plaintiff's middle name was Callejas instead of Campos (3) Callejas sometimes went by the alias Campos (4) Plaintiff matched Callejas' date of birth (5) Plaintiff matched Callejas for scars on the forearm and near his eye (6) Plaintiff matched height and weight descriptions of Callejas and (7) Plaintiff's address in South Los Angeles matched Callejas.

Defendant's citation to Baker v. McCollan, 443 U.S. 137, 140 (1979) is directly on point.  As Defendant points out, there a case of mistaken identity caused the brother of a criminal to be detained for three days in jail before the police discovered their mistake. Id.  The Supreme Court held that because McCollan was arrested pursuant to a valid arrest warrant, there was no Constitutional violation for invalid detention. Id..

We find the information cited above to constitute sufficient probable cause to authorize Hoffenfeiken to make the arrest.  In addition, we note that such detention and suspicion over

Plaintiff's identity had been reoccurring–several other police officers, bank officials and sellers having questioned Plaintiff's identity.  Therefore, disregarding a non-match for Social Security number was not unreasonable in light of the fact that several other police officers had made the same mistake of identity.

Plaintiff points to the fact that Hoffenfeiken arrested Plaintiff and took him to the jail despite the fact that Plaintiff's Social Security number was not a match and that he had a valid Nevada state driver's license with him.  The Ninth Circuit has held that "knowingly arresting the wrong man pursuant to a facially valid warrant issued for someone else violates rights guaranteed by the Fourth Amendment."  Lee v. Gregory, 363 F.3d 931, 935 (citing Brown v. Byer, 870 F.2d 975 (5th Cir. 1989).  However, here, Plaintiff has not presented facts upon which we could find that Defendant Hoffenfeiken believed that Plaintiff was not Callejas.  Although Plaintiff points to the fact that the Social Security number did not match and that Plaintiff had a valid Nevada state driver's license, Plaintiff overlooks the overwhelming evidence in the other direction to which Hoffenfeiken was privy. Given the number of matches that were evident (including the California address, scars, name, and date of birth) there is no evidence that Hoffenfeiken was arresting and detaining Plaintiff for an unreasonable suspicion that there was an outstanding facially valid warrant for Plaintiff's arrest.[2]

---

[2]We note that there are cases within the Ninth Circuit where the court has held that mistakes were not reasonable.  However, in those

13

Plaintiff then argues that Hoffenfeiken was unreasonable in his arrest in that he refused to listen to Plaintiff's side of the story and that he ignored the evidence of Snyder's card in his wallet.³  The Ninth Circuit has recently held that "once probable cause to arrest someone is established . . . a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.'"  Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2002)(quoting Baker v. McCollan, 443 U.S. 137, 145-46 (1979)). Here, although Plaintiff claimed that he was not Callejas and that he did not "do drugs and drive," Defendant Hoffenfeiken, once he had the matches to name, date of birth, scars and address in Los

cases, more than a few identifiers did not match.  Here, only one thing did not match Callejas' description and personal information. See Simons v. Marin County, 682 F.Supp. 1463, 1466-67 (N.D. Cal. 1987)(mistake was unreasonable where there were different middle names, different ages, and residences in different areas of California).

³We find the evidence that Defendant may have ignored Snyder's business card which was in Plaintiff's wallet unpersuasive. Plaintiff did not alert Hobbenfeiken to this evidence and it is not clear that Hobbenfeiken even noticed the card. In addition, the simple fact that Plainitff had Snyder's card does not create any issue of fact on any of the elements. Snyder's card could have been in Plaintiff's wallet for a number of reasons.

14

Angeles, had probable cause to arrest Plaintiff and did not need to look further for reasons not to arrest and detain Plaintiff.

We therefore find that Plaintiff's claim for false arrest in violation of section 1983 is without merit and summary judgment will be granted on this claim in favor of Defendant.[4]

**D.   1983 Custom and Policy**

Plaintiff claims that the custom and policy of the Washoe County Sheriff's Department and Washoe County allowed the constitutional violations against Plaintiff to be committed. Plaintiff claims that Washoe County Sheriff's Department and Washoe County knew or should have known that Hoffenfeiken and the other deputies had a history of violence and violation of civil rights and that Washoe County Sheriff's Department and Washoe County failed to adequately train and supervise the deputies.

It is unclear how such a claim would apply to Hoffenfeiken and Plaintiff in his Opposition to Summary Judgment has failed to put forth a basis on which we should apply this claim to the Defendant before us.  Indeed, even Plaintiff points to the fact that *supervisors* can be held liable for violations of officers if he

---

[4]Plaintiff goes on to claim that his further detention in the jail was in violation of his Fourth Amendment rights since the officers could have easily done a simple check to see he was the wrong person.  We do not review this claim as it does not relate to Defendant Hoffenfeiken.  Since Hoffenfeiken had departed the jail at 7:27 a.m. that day, we find that he was not involved in the further detention of Plaintiff.

15

knew of them and failed to prevent them.  Here, there is no evidence that Hoffenfeiken was anything other than an employee officer or that he was a supervisor of the other deputies.

Therefore, Plaintiff's claim against Hoffenfeiken for deliberate indifference will dismissed.

**E.   Equal Protection Claim**

Plaintiff claims that he was treated differently in that he was incarcerated because of his ethnicity and national origin.  We confine this allegation to the conduct of Defendant Hoffenfeiken for purposes of this motion.

In order to prevail on his claim for violation of his equal protection rights, Plaintiff must prove that Hoffenfeiken "acted in a discriminatory manner and that the discrimination was intentional."  Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2003)(quoting Reese v. Jefferson Sch. Dist. No. 14J, 2098 F.3d 736, 740 (9th Cir. 2000).

The evidence that Plaintiff has presented to prove this claim against Defendant Hoffenfeiken is that Hoffenfeiken stated in his deposition that Plaintiff was born in Mexico, as written on his driver's license, and that Plaintiff had an ID card from Mexico. Plaintiff seems to think that since both of these items were false and because Hoffenfeiken remembered these details falsely that this proves he acted in detaining and arresting Plaintiff on the basis of intentional discrimination.

Essentially Plaintiff argues that because Hoffenfeiken made false statements about Plaintiff's national origin, that these statements are enough to raise an inference of racial

discrimination.  We disagree.  To avoid summary judgment, Plaintiff must be reminded that he must "produce evidence sufficient to permit a reasonable trier of fact to find by preponderance of the evidence that [the decision] was racially motivated." <u>Keyser v. Sacramento City Unified Sch. Dist.</u>, 265 F.3d 741, 754 (9th Cir. 2001)(quoting <u>FDIC v. Henderson</u>, 940 F.2d 465, 473 (9th Cir. 1991)).

   Plaintiff overlooks, again, the overwhelming evidence that Defendant Hoffenfeiken was faced with when he decided to arrest Plaintiff-the high number of matches of Plaintiff's identity with the identity of Callejas.  Since he has not presented any evidence of discriminatory intent, Plaintiff has failed to present an issue of fact as to whether Hobbensfeiken's actions violated the Equal Protection Clause.

   **IT IS HEREBY ORDERED** that Defendant Hoffenfeiken's Motion for Summary Judgment (#29) is **GRANTED.**

This __23rd__ day of November, 2005.

                              _____
                              UNITED STATES DISTRICT JUDGE

17